Maxon R. Davis
DAVIS, HATLEY, HAFFEMAN & TIGHE, P.C.
The Milwaukee Station, Third Floor
101 River Drive North
Great Falls, Montana 59401
Telephone: (406) 761-5243
max.davis@dhhtlaw.com
*Attorneys for Defendants Medical Device Business Services,*
*Inc., DePuy Synthes Sales, Inc., Johnson & Johnson Services,*
*Inc., and Johnson & Johnson*

## UNITED STATES DISTRICT COURT
## DISTRICT OF MONTANA
## MISSOULA DIVISION

|  |  |
|---|---|
| KEITH MCGUIRE, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: _____ |
| KB ORTHOPEDICS, INC., KARL | ) |
| BUHR, MEDICAL DEVICE | ) |
| BUSINESS SERVICES, | ) **NOTICE OF REMOVAL** |
| INCORPORATED (f/k/a DEPUY, | ) |
| INC.; DEPUY ORTHOPEDICS | ) **JURY TRIAL DEMANDED** |
| INC.; and DEPUY | ) |
| ORTHOPAEDICS, INC.); DEPUY | ) |
| SYNTHES SALES, | ) |
| INCORPORATED; JOHNSON & | ) |
| JOHNSON SERVICES, | ) |
| INCORPORATED; and | ) |
| JOHNSON & JOHNSON, | ) |
| Defendants. | ) |

Defendants DePuy Orthopaedics, Inc., now known as Medical Device Business Services, Inc. ("DePuy"); DePuy Synthes Sales, Inc.; Johnson & Johnson Services, Inc.; and Johnson & Johnson (collectively, "removing defendants"), through undersigned counsel, hereby remove the state-court action entitled *Keith McGuire v. KB Orthopedics, Inc. et al.*, Civil Action No. DV-32-2023-0000249-PL, filed in the Fourth Judicial District Court of Missoula County, Montana, to this Court.

## NATURE OF THE ACTION

1.      On or about March 8, 2023, plaintiff filed a Complaint against the removing defendants as well as KB Orthopedics, Inc. and its President, Karl Buhr, in the Fourth Judicial District Court of Missoula County, bearing case number DV-32-2023-0000249-PL. *See* Compl. (attached as Ex. 1).

2.      Plaintiff alleges that he sustained injuries as a result of being implanted with a "DePuy Pinnacle MoM hip replacement system" ("Pinnacle Cup System") and a "DePuy Articular Surface Replacement" ("ASR") manufactured and sold by DePuy. (*See, e.g.*, Compl. ¶¶ 2-3, 17.)

3.      This is one of numerous similar cases pending around the country involving personal injury allegations by plaintiffs who claim they were injured as a result of implantation with the ASR and/or Pinnacle Cup System.

2

4.      The present case reflects an ongoing strategy by the law firm representing Mr. McGuire of attempting to evade federal diversity jurisdiction by naming one or two peripheral in-state distributors of the ASR and/or Pinnacle Cup System as defendants, even though the DePuy and J&J entities are obviously the real intended targets of the litigation.

5.      As set forth more fully below, this case is properly removed pursuant to 28 U.S.C. § 1441, because the Court has subject-matter jurisdiction over it pursuant to 28 U.S.C. § 1332 and removing defendants have satisfied the procedural requirements for removal.

## I.     REMOVAL IS PROPER BECAUSE THIS COURT HAS SUBJECT-MATTER JURISDICTION PURSUANT TO 28 U.S.C. §§ 1332 AND 1441.

6.      The Court has subject-matter jurisdiction over this case pursuant to 28 U.S.C. §§ 1332 and 1441 because this is a civil action in which the amount in controversy exceeds the sum of $75,000, exclusive of costs and interest, and is between citizens of different states.

### A.     The Parties That Are Not Fraudulently Joined Are Diverse.

7.      Plaintiff is a resident of the State of Montana.  (Compl. at 1.)  He alleges that at all times relevant to the Complaint, he is and was a citizen of the State of Montana.  (Compl. ¶ 132.)

8.      DePuy is, and was at the time plaintiff commenced this action, a corporation organized under the laws of the State of Indiana with its principal place of business in Warsaw, Indiana, and is therefore a citizen of the State of Indiana for purposes of determining diversity.  28 U.S.C. § 1332(c)(1); (Decl. of  Laura McFalls ("McFalls Decl.") ¶ 3, May 10, 2023 (attached as Ex. 2); Compl. ¶¶ 37-38; *see also* https://bsd.sos.in.gov/publicbusinesssearch#, Business ID No. 1991110416).

9.      DePuy Synthes Sales, Inc. is, and was at the time plaintiff commenced this action, a corporation organized under the laws of the State of Delaware with its principal place of business in Raynham, Massachusetts, and is therefore a citizen  of the States of Delaware and Massachusetts for purposes of determining diversity.  28 U.S.C. § 1332(c)(1); (McFalls Decl. ¶ 4; Compl. ¶ 40; *see also* https://icis.corp.delaware.gov/ecorp/entitysearch/namesearch.aspx, File Number 5276338).

10.     Johnson & Johnson Services, Inc. and Johnson & Johnson are, and were at the time plaintiff commenced this action, corporations organized under the laws of the State of New Jersey with their principal places of business in New Brunswick, New Jersey, and are therefore citizens of the State of New Jersey for purposes of determining diversity.  28 U.S.C. § 1332(c)(1); (McFalls Decl. ¶¶ 5-6; Compl. ¶¶ 41, 45; *see also*

h2ttps://www.njportal.com/DOR/BusinessNameSearch/Search/BusinessName,

Entity IDs 0100095166 and 5106301000).

11.     KB Orthopedics is alleged to be a citizen of the State of Montana.[1]

(Compl. ¶ 18.)

12.     The citizenship of defendant Karl Buhr is not alleged in the

Complaint.  However, Mr. Buhr's sworn declaration explains that he has been a

citizen of Arizona since 2016 and, importantly, was a citizen of Arizona when

plaintiff filed this lawsuit.  (*See* Decl. of Karl Buhr ("Buhr Decl.") ¶¶ 1, 3, 4, May 2,

2023 (attached as Ex. 3).)  *See also Thompson v. Coulter*, No. CV-10-27-BLG-

RFC, 2010 WL 2802756, at *1 (D. Mont. July 13, 2010) ("For purposes of

diversity jurisdiction, domicile is determined at the time suit was filed.").  In short,

the uncontroverted evidence shows that Buhr is diverse from plaintiff.

13.     Thus, plaintiff is diverse from all defendants except KB Orthopedics.

14.     Although KB Orthopedics is alleged to be a citizen of Montana, its

presence in this action does not defeat diversity jurisdiction because it is

fraudulently joined.

15.     Accordingly, there is complete diversity of citizenship between

---

[1] The Complaint alleges that KB Orthopedics "is an active Idaho corporation organized under the laws of Montana." (Compl. ¶ 20.)  While KB Orthopedics was actually dissolved in 2018 (*see id.* ¶ 19), that does not bear on its citizenship for purposes of federal diversity jurisdiction.

plaintiff and the properly joined and served defendants, and thus, removal is

proper.  28 U.S.C. §§ 1332(a), 1441(a).

    **B.**    **Plaintiff Has Fraudulently Joined KB Orthopedics, And Its**
           **Citizenship Should Therefore Be Disregarded.**

16.    KB Orthopedics is fraudulently joined and its citizenship should be

disregarded for purposes of determining whether removal is proper. "[F]raudulently

joined defendants will not defeat removal on diversity grounds." *Ritchey v. Upjohn*

*Drug Co.*, 139 F.3d 1313, 1318 (9th Cir. 1998).  "Joinder of a non-diverse defendant

is deemed fraudulent, and the defendant's presence in the lawsuit is ignored for

purposes of determining diversity, '[i]f the plaintiff fails to state a cause of action

against a resident defendant, and the failure is obvious according to the settled rules

of the state.'" *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001)

(citation omitted); *see also Burnett v. PacificSource Health Plans*, No. CV 19-45-H-

SEH, 2019 WL 4016604, at *1-3  (D. Mont. Aug. 26, 2019) (finding removal proper

where "[f]acts sufficient to state an independent claim for relief against [the non-

diverse defendant] [we]re not well- pleaded [sic]"); *Giard v. Ouellette*, No. CV-12-

113-BLG-RFC-CSO, 2012 WL 5386958, at *5 (D. Mont. Nov. 1, 2012) ("The Court

concludes that the complaint fails to state a claim against Ouellette.  The Court

further concludes that this failure is obvious under Montana law."), *report and*

*recommendation adopted*, No. CV- 12-113-BLG-RFC, 2013 WL 796366 (D. Mont.

Mar. 4, 2013).

17.     As discussed below, it is "obvious" that plaintiff's claims against KB

Orthopedics have no possibility of success for multiple reasons.  Indeed, a federal

court overseeing another Pinnacle Cup System case brought by the same law firm

representing plaintiff denied a motion to remand a similar lawsuit to state court,

finding that the distributor defendants were fraudulently joined.  *See Hall v.*

*OrthoMidwest, Inc.*, 541 F. Supp. 3d 802 (N.D. Ohio 2021) (holding that allegations

did not give rise to "plausible" inference that distributor defendants had any

knowledge of any alleged defect in the Pinnacle Cup System or that they made any

"independent" representation to the plaintiff's surgeon and that, in any event, any

such allegations were refuted by the declaration submitted by the distributors in that

case, which the plaintiff did not counter with any evidence of his own).

### 1.     Plaintiff's Claims Have No Possibility of Success Under Montana Law.

18.      The Complaint asserts five counts against KB Orthopedics, for strict

liability and failure to warn (Count One), breach of express and implied warranties

(Count Two), actual fraud and constructive fraud (Count Three), negligence (Count

Five), and the Montana Consumer Protection Act (Count Six).  Each of these causes

of action fails.

19.     *First*, plaintiff cannot state a colorable cause of action for strict

7

liability against KB Orthopedics because that defendant is not a "seller" under the applicable statute.  *See* Mont. Code Ann. § 27-1-719.  In Montana, "[a] person who sells a product in a defective condition that is unreasonably dangerous to a user or consumer . . . is liable for physical harm caused by the product" if "the seller is engaged in the business of selling the product" – i.e., is a "manufacturer, wholesaler, or retailer."  *Id.*; *see also Papp v. Rocky Mountain Oil & Minerals, Inc.*, 769 P.2d 1249, 1255 (Mont. 1989) (explaining that strict products liability under Montana law is limited to "'one who sells a product in a defective condition,' where the seller is engaged in the business of selling the product") (citation omitted); *Mitchell v. Shell Oil Co.*, 579 F. Supp. 1326, 1331 (D. Mont. 1984) (plaintiff failed to assert valid strict liability claims where non- manufacturing defendant "was not in the business of selling th[e] product to the general public").

20.    Here, contrary to plaintiff's assertions in the Complaint, KB Orthopedics did not sell the ASR or Pinnacle Cup System.  (*See* Buhr Decl. ¶ 8 (although "KB Orthopedics distributed medical products for DePuy, KB Orthopedics did not purchase the products from DePuy; nor did it take title to or obtain an ownership interest in the products.  Rather, ***DePuy negotiated pricing and sold its products directly to hospitals***.") (emphasis added); *id.* ¶ 15 ("KB Orthopedics played no role in the research, design, manufacture, development, or

testing of the ASR or Pinnacle hip prostheses."); *id.* ¶ 17 (KB Orthopedics did not

"draft[], compile[], or generate[] the packaging, labeling and/or language (including

any instructions or warnings) used in the package inserts for the ASR or Pinnacle hip

prostheses.").)  Regardless of legal theory – design defect or failure to warn –

plaintiff's strict liability claim against KB Orthopedics has no prospect of success

because it was not a seller of the ASR or Pinnacle Cup System.

21.    ***Second***, plaintiff's negligence cause of action against KB Orthopedics

also has no possibility of success because he cannot establish that KB Orthopedics

owed him an independent duty.  Under Montana law, a plaintiff must first establish

that a defendant owed him a duty of care before he can recover for negligence.  *See*

*Fabich v. PPL Mont., LLC*, 170 P.3d 943, 947, 950 (Mont. 2007) (a negligence

claim fails unless plaintiff can offer proof "of the breach of a duty which causes

damages").

22.    Courts throughout the country have recognized that entities like KB

Orthopedics do not have a duty, under negligence law, to test or inspect a product.

*See, e.g.*, *Satchi v. Rheon U.S.A., Inc.*, 255 F. Supp. 3d 253, 262-63 (D. Mass. 2017)

(distributor could not be held liable for negligence for failure to perform a safety

check on product because it "had no obligation to perform a safety check of the

[product] and never assumed an affirmative duty to perform such a check");

*McLaurin v. E. Jordan Iron Works, Inc.*, 666 F. Supp. 2d 590, 601-02 (E.D.N.C. 2009) (noting the "general rule" that a "non-manufacturing seller who is acting as a 'mere conduit' of the product has no affirmative duty to inspect and test a product made by a reputable manufacturer"); *Vandelune v. 4B Elevator Components Unlimited*, 148 F.3d 943, 947 (8th Cir. 1998) (independent distributor could not be held liable for negligent failure to inspect or test); *Curry v. Sile Distribs.*, 727 F. Supp. 1052, 1054 (N.D. Miss. 1990) ("A distributor owes no duty to inspect a product for latent defects"); *Richardson v. Michelin N. Am., Inc.*, No. 95-CV-0760E(H), 1998 WL 135804, at *5 (W.D.N.Y. Mar. 18, 1998) (retailer "did not have a duty to inspect or test the [product]"); *see also, e.g.*, *Walker v. Medtronic, Inc.*, No. 1:03CV74-D-D, 2003 U.S. Dist. LEXIS 26549, at *9 (N.D. Miss. June 4, 2003) (denying remand in case involving allegedly defective medical device because plaintiff's failure-to-warn claims against non-diverse sales representative were barred; "any duty to warn a physician about the dangers of a medical device is placed upon the device's manufacturer" and therefore "the sales representative selling the device is under no duty to warn patients concerning the device"); *Lizana v. Guidant Corp.*, No. 1:03cv254GRo, 2004 U.S. Dist. LEXIS 27623, at *6- 9 (S.D. Miss. Jan. 20, 2004) (denying remand in case involving allegedly defective pacemaker because plaintiff's claim against non-diverse sales representative failed; "a medical device's

10

manufacturer possesses a duty to warn a physician about possible dangers regarding the device, with sales representatives of the manufacturer under no obligation to warn patients about the device"); *DaCosta v. Novartis AG*, 180 F. Supp. 2d 1178, 1183 (D. Or. 2001) (denying remand because pharmaceutical sales representative owed no duty to the plaintiff).

23.     Moreover, it is well settled that a distributor or sales organization with no special knowledge regarding a product cannot be held liable under a theory of negligence. *See* Restatement (Second) of Torts § 402 (1965)[2] (indicating that a seller of a product manufactured by a third person "who neither knows nor has reason to know that it is, or is likely to be, dangerous, is not liable in an action for negligence for harm caused by the dangerous character or condition of the [product] because of his failure to discover the danger by an inspection or test of the [product] before selling it"); *Shuras v. Integrated Project Servs., Inc.*, 190 F. Supp. 2d 194, 199-200 (D. Mass. 2002) (granting summary judgment on negligence claim against distributor because the plaintiff "offer[ed] no evidence to suggest that Kuhlman **knew or had reason to know** of any defects in the [product]") (citing Restatement

---

[2] Montana has adopted Section 402A of the Restatement (Second) of Torts concerning strict liability. *See, e.g.*, *Brown v. N. Am. Mfg. Co.*, 576 P.2d 711, 716 (1978). Although removing defendants are not aware of any case in which Montana has expressly adopted Section 402 concerning an absence of a duty to inspect chattel, "[i]n the absence of a controlling decision of the Supreme Court of the State of Montana, the federal courts in Montana sitting in diversity cases have looked to and adopted as the applicable rule of law in Montana the Restatement of the Law of Torts, Second." *Hornung v. Richardson-Merrill, Inc.*, 317 F. Supp. 183, 184 (D. Mont. 1970).

(Second) of Torts § 402).

24.      While the Complaint does attempt to plead knowledge of alleged

product defects on the part of KB Orthopedics, it does so in a conclusory manner,

simply alleging that KB Orthopedics "knew or should have known" about the

purported defects in the ASR and Pinnacle Cup System.  (*See* Compl. ¶ 22.)  "Other

courts reviewing product liability claims for fraudulent joinder have held that bald or

conclusory allegations that a defendant 'knew' of a product defect or 'failed to use

reasonable care' in the distribution or sale of a product do not establish colorable

claims of negligence." *Moore v. Johnson & Johnson*, 907 F. Supp. 2d 646, 668

(E.D. Pa. 2012) (denying remand and finding a retailer fraudulently joined on all

claims).

25.      None of plaintiff's other allegations comes close to pleading a

colorable basis for imputing any knowledge of a purported defect to KB Orthopedics

either.  For example, plaintiff alleges that KB Orthopedics gained "independent"

"knowledge" of the ASR and Pinnacle Cup System through the orthopedic

community by attending "conferences," "workshops," and revision surgeries

involving the product.  (*See* Compl. ¶ 30 ("Distributor Defendants would attend

conferences and workshops held by a variety of professionals and gain knowledge

from sources independent of Johnson & Johnson."); *id.* ¶ 32 ("Distributor

Defendants and/or their sales representatives attended numerous surgeries in which an ASR or Pinnacle device was revised due to a metal reaction.").)[3] But the *Hall* court rejected similar boilerplate allegations, which do not allege *what* purported knowledge the distributor defendants supposedly gained and how such as-yet-unidentified knowledge put these defendants on notice that the ASR and Pinnacle Cup System were allegedly defective. *See Hall*, 541 F. Supp. 3d at 810 ("Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement.") (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). As the *Hall* court put it, knowledge of revision surgeries does not equal knowledge of specific product defects because "[p]roduct revisions and defects are two very different things." *Id.* In short, these allegations are no less conclusory than plaintiff's allegation that "Distributor" "knew or should have known" of a purported defect.

26.    In any event, plaintiff's conclusory and implausible allegations are directly contradicted by the declaration submitted by Mr. Buhr showing that neither

---

[3] Plaintiff also alleges that KB Orthopedics, as one of the Distributor Defendants, "assisted in the 2010 recall of the ASR" and "knew or should have known . . . that the ASR was based upon the Pinnacle to such a degree that J&J deemed it to be 'substantially equivalent.'" (Compl. ¶¶ 115-116.) According to plaintiff, this means that KB Orthopedics "knew or should have known that the recall of the ASR implicated a safety concern for the Pinnacle." (Compl. ¶ 117.) Plaintiff goes on to allege that KB Orthopedics' failure to disseminate the information it had regarding the recall negatively impacted plaintiff's treatment. (Compl. ¶¶ 120-122.) However, these allegations are clearly either irrelevant and/or nonsensical. As plaintiff notes, the recall occurred in 2010. Plaintiff received an ASR in 2006 and a Pinnacle Cup System in 2008. (Compl. ¶¶ 133, 135.) Obviously, KB Orthopedics' alleged failure to advise plaintiff's treating surgeons of a recall that *had not yet occurred* at the time plaintiff was implanted with the products at issue – indeed, one that would not occur for a number of years *after* plaintiff was implanted with the products at issue – cannot be a cause of the injuries alleged herein.

he nor KB Orthopedics had any "knowledge of any alleged manufacturing, design, or other defect in the ASR or Pinnacle hip prostheses at any time material to plaintiff's Complaint." (*See, e.g.*, Buhr Decl. ¶ 20.) As the *Hall* court explained, such evidence provides an independent basis for finding that negligence claims against a distributor and one of its employees are destined to fail. *See Hall*, 541 F. Supp. 3d at 810 (relying on similar declaration and finding that "[p]laintiff can have no recovery against the [d]istributor [d]efendants"); *see also, e.g.*, *Slay v. DePuy Orthopaedics, Inc.*, No. 1:11 dp 20524, 2011 WL 3052531, at *3-5 (N.D. Ohio July 25, 2011) (denying remand where non-diverse sales representative defendant stated in a sworn declaration that he "ha[d] 'no personal knowledge' of the warnings, marketing, advertising, manufacturing, design, or other defect related to the hip implants," and noting that "where the non-moving party has presented unrebutted evidence in the form of an affidavit or declaration, the [c]ourt will give weight to the sworn testimony rather than the unsupported allegations of the complaint"); *Tucker v. Howmedica Osteonics Corp.*, No. 1:14-CV-1176-ODE, 2014 WL 12061532, at *5 (N.D. Ga. Oct. 2, 2014) (denying remand and finding "[p]laintiff's merely conclusory allegations" that defendants knew or should have known of alleged product defects "cannot survive Crosslink's submission of testimonial evidence to the contrary").

14

27.     **Third**, plaintiff's claims against KB Orthopedics for breach of express and implied warranty also have no possibility of success because KB Orthopedics was not a "seller" of the Pinnacle Cup System.  In Montana, express and implied warranties are only created by "sellers."  *See* Mont. Code Ann. § 30-2-313 ("Any affirmation of fact or promise made by the **seller** to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.") (emphasis added); Mont. Code Ann. § 30-2-314 ("[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the **seller** is a merchant with respect to goods of that kind.") (emphasis added).  Under this statutory scheme, a "seller" is a "person who sells or contracts to sell goods."  Mont. Code Ann. § 30-2-103.

28.     As previously discussed, KB Orthopedics did not sell the hospital, plaintiff's surgeon, or plaintiff the ASR or Pinnacle Cup System – or contract to sell the product.[4]  (*See* Buhr Decl. ¶ 8.)  Rather, that product was sold "directly" by DePuy. (*Id.*)  Accordingly, there is no reasonable possibility that plaintiff could prevail against KB Orthopedics on his claims for breach of warranty.

---

[4] Plaintiff's express warranty claim independently has no reasonable possibility of success because he does not adequately allege any reliance on a supposed express warranty.  *See Woodahl v. Matthews*, 639 P.2d 1165, 1168 (Mont. 1982) ("There can be no express warranty without reliance.").  Although plaintiff alleges that defendants "expressly warranted that the ASR and Pinnacle were reasonably fit for their intended purpose as hip replacement systems" (*see* Compl. ¶ 166), plaintiff does not specify whether these warranties were communicated by KB Orthopedics to plaintiff or his surgeon and which specific warranties – if any – plaintiff or his surgeon relied on.  For this reason too, plaintiff's claim for breach of express warranty has no reasonable prospect of success.

29.    *Finally*, plaintiff's causes of action against KB Orthopedics for fraud and violation of the Montana Consumer Protection Act ("MCPA") are also doomed to fail because the Complaint does not identify a single alleged misrepresentation from KB Orthopedics upon which Mr. McGuire or his surgeon could have relied prior to plaintiff's implantation with the ASR and Pinnacle Cup System. Under Montana law, "[i]n order to prove fraud [a plaintiff] must prove," *inter alia*, "a representation; . . . its falsity . . . [plaintiff's] reliance on the representation . . . [and] [plaintiff's] consequent and proximate injury caused by the reliance." *Batten v. Watts Cycle & Marine, Inc.*, 783 P.2d 378, 380-81 (Mont. 1989); *see Fossen v. Fossen*, 311 P.3d 743, 746-47 (Mont. 2013) (affirming trial court's dismissal of fraud claim where the plaintiff did not specify the representation made to the plaintiff because "[w]ithout particular facts and circumstances describing the representation, [defendant] cannot effectively answer the complaint's allegations about the representation"). Similarly, a fraud-based claim under the MCPA requires that the allegedly fraudulent act caused the plaintiff's injury. *See* Mont. Code Ann. § 30-14-103; Mont. Code Ann. § 30-14-133 ("[A] consumer who suffers any ascertainable loss . . . may bring an individual" action.); *see also Anderson v. ReconTrust Co., N.A.*, 407 P.3d 692, 700 (Mont. 2017) ("A private MCPA claim also requires proof that the alleged unfair or deceptive trade act or practice ***caused***

16

the complaining consumer to suffer an 'ascertainable' financial or property 'loss.'")
(emphasis added).

30.    Importantly, plaintiff must allege these elements with the particularity
required by Federal Rule of Civil Procedure 9(b).  *See, e.g.*, *Neilson v. Union Bank of
Cal., N.A.*, 290 F. Supp. 2d 1101, 1141 (C.D. Cal. 2003) ("It is well-established in
the Ninth Circuit that both claims for fraud and negligent misrepresentation must
meet Rule 9(b)'s particularity requirements.").  Bald allegations of fraud cannot
defeat diversity jurisdiction.  *See, e.g.*, *In re Rezulin Prods. Liab. Litig.*, 133 F. Supp.
2d 272, 283 (S.D.N.Y. 2001) (defendant fraudulently joined because, *inter alia*,
plaintiffs did not meet Rule 9(b)'s requirements where they failed to allege "the time
and place of particular representations"); *see also Drange v. Mountain W. Farm
Bureau Mut. Ins. Co.*, No. 20-30-BLG-SPW, 2020 WL 4430507, at *1 (D. Mont.
July 30, 2020) ("Claims sounding in fraud or mistake are subject to the heightened
pleading standard of Federal Rule of Civil Procedure 9(b). . . .").

31.    Here, the Complaint has not identified any statements that KB
Orthopedics allegedly made to plaintiff (or his surgeon) regarding the safety or
efficacy of the ASR or Pinnacle Cup System.  Instead, the Complaint vaguely asserts
that "[p]rior to [p]laintiff's surgeries, Distributor Defendants and/or their sales
representatives provided information to [p]laintiff's orthopedic surgeon regarding

the ASR and Pinnacle," and that "[p]laintiff's orthopedic surgeon, nurses and hospital staff relied on information and assistance from Distributor Defendants and their sales representatives." (*See* Compl. ¶¶ 64-73.) Plaintiff never alleges when any meetings between these unidentified sales representatives and his unnamed surgeon took place or what specific misrepresentations he or his surgeon relied on. (*See id.*) In fact, plaintiff does not allege the identity of anyone on the medical staff who supposedly relied on those misrepresentations or even at which hospital his implantation surgery took place. (*See id.*; *id.* ¶¶ 134-135.) *See Fossen*, 311 P.3d at 745-46 ("A sufficiently pled fraud complaint should allege not only that a representation was made, but also the time and place of the representation.").

32.    Indeed, the only specific misrepresentation or omission alleged in the Complaint pertains to information that did not exist at the time plaintiff was implanted with the ASR and Pinnacle Cup System and therefore cannot have caused or contributed to the decision to use those products in plaintiff. Plaintiff alleges that KB Orthopedics, as one of the Distributor Defendants, "assisted in the 2010 recall of the ASR" and "knew or should have known . . . that the ASR was based upon the Pinnacle to such a degree that J&J deemed it to be 'substantially equivalent.'" (Compl. ¶¶ 115-116.) According to plaintiff, this means that KB Orthopedics "knew or should have known that the recall of the ASR implicated a safety concern for the

18

Pinnacle" (Compl. ¶ 117) and that KB Orthopedics' failure to disseminate the information it had regarding the recall negatively impacted plaintiff's treatment (Compl. ¶¶ 120-122).  However, as plaintiff notes, the recall occurred in 2010. Plaintiff received an ASR in 2006 and a Pinnacle Cup System in 2008.  (Compl. ¶¶ 133, 135.)  KB Orthopedics cannot have made any misstatements or omissions regarding a 2010 recall until 2010 at the earliest, and therefore neither plaintiff nor his surgeon could have relied on any such misstatement or omission at the time the products at issue were implanted in 2006 and 2008.

33.    Further, as noted in the declaration of Mr. Buhr, "[a]ll marketing and promotional materials utilized by KB Orthopedics or its representatives relating to the ASR and/or Pinnacle hip prostheses were generated by or for DePuy" (Buhr Decl. ¶ 18); *see Hall*, 541 F. Supp. 3d at 810-11 ("Even on the face of the amended complaint, the representations [p]laintiff alleges the [d]istributor [d]efendants made actually came from DePuy.").  In any event, the Complaint does not allege that either Mr. McGuire or his surgeon saw or relied on any particular materials or other representations.

34.    For these reasons, plaintiff's fraud-based claims against KB Orthopedics have no reasonable possibility of success.

### 2.    Plaintiff's Claims Against KB Orthopedics Also Are Preempted.

35.     Plaintiff's claims against KB Orthopedics are also doomed to fail because such claims against ***non-manufacturers*** of an FDA-cleared product are preempted. *See PLIVA, Inc. v. Mensing*, 564 U.S. 604, 624-25 (2011); *Mut. Pharm. Co. v. Bartlett*, 570 U.S. 472 (2013).  Plaintiff does not allege any facts capable of establishing that KB Orthopedics, which provided DePuy's products to physicians and hospitals, played any role in the manufacture or design of the ASR and/or Pinnacle Cup System, and the evidence in the record establishes that it did not.  (*See* Buhr Decl. ¶ 15.)

36.     In *Mensing*, the U.S. Supreme Court ruled that all claims against generic drug manufacturers that were premised on a failure to warn are preempted by federal law based on the principle of impossibility preemption.  564 U.S. at 624-25. According to the Supreme Court, generic manufacturers cannot be found liable on a theory of failure to warn because generic manufacturers have no power to unilaterally effectuate a label change; rather, they must use the same labels and warnings as those approved by the FDA with respect to the brand-name version of the drug. *Id*. at 613-15.  Thus, as long as the labels and warnings for the generic form of the drug match the labels and warnings that the FDA has approved for the brand-name form of the drug, generic manufacturers cannot as a matter of law be held liable under state tort law for failing to warn.

20

37.    Although *Mensing* involved failure-to-warn claims, the Supreme Court has reached a similar conclusion as to product-design claims as well.  In *Bartlett*, the Supreme Court held that a generic manufacturer could not "legally make [the relevant product] in another composition" under the Federal Food, Drug and Cosmetic Act ("FDCA").  *Bartlett*, 570 U.S. at 483-84 (citation omitted).  As the Court explained, "the FDCA requires a generic drug to have the same active ingredients, route of administration, dosage form, strength, and labeling as the brand-name drug on which it is based."  *Id.* (citing 21 U.S.C. §§ 355(j)(2)(A)(ii)-(v) and (8)(B); 21 C.F.R. § 320.1(c)).  Because it was "not possible" for the generic manufacturer defendant in *Bartlett* to "redesign" the product at issue to make it more useful or less risky, the Court concluded that causes of action based on a defective design theory are likewise preempted.  *See id.*; *see also Demahy v. Schwarz Pharma, Inc.*, 702 F.3d 177, 187 (5th Cir. 2012) (per curiam) ("[W]e are persuaded that [plaintiff's] design defect claim [against generic manufacturer] would be preempted [under *Mensing*]."); *Gardley-Starks v. Pfizer, Inc.*, 917 F. Supp. 2d 597, 611 (N.D. Miss. 2013) (design-defect claims "are also preempted"); *In re Pamidronate Prods. Liab. Litig.*, 842 F. Supp. 2d 479, 484 (E.D.N.Y. 2012) ("[T]he 'federal duty of 'sameness''' also applies in the context of generic drug design") (citation omitted).

38.    As other courts have found, these principles apply in spades to non-

manufacturing defendants such as KB Orthopedics. After all, KB Orthopedics had

"no authority" to effectuate changes to the product or its labeling either. *See, e.g.*, *In*

*re Fosamax (Alendronate Sodium) Prods. Liab. Litig. (No. II)*, MDL No. 2243 (JAP-

LHG), No. 3:08-cv-00008-JAP-LHG, 2012 U.S. Dist. LEXIS 5817, at *26-28

(D.N.J. Jan. 17, 2012) (because a distributor "ha[d] no authority to initiate a labeling

change" and "no power to unilaterally change Fosamax labeling," it "could not

'independently do under federal law what state law requires of it'") (citation

omitted); *see also Stevens v. Cmty. Health Care, Inc.*, No. ESCV200702080, 2011

WL 6379298, at *1 (Mass. Super. Ct. Oct. 5, 2011) ("As a distributor, however, [the

defendant] had no ability to change labeling or warnings and thus, like a generic

manufacturer, [it] cannot be subject to liability in connection with a state law claim

premised on a 'failure to warn.'").

39.    In *In re Fosamax*, for example, the court granted a distributor's motion

for judgment on the pleadings after finding that the plaintiffs' state-law claims were

preempted. 2012 U.S. Dist. LEXIS 5817, at *26-28. The plaintiffs in *Fosamax*

asserted a number of claims against "the authorized distributor of branded Fosamax"

that "emanated from a general theory of failure to warn," including "defective

design, negligence, fraud, misrepresentation, breach of express and implied

warranties, violation of consumer protection statutes, restitution, and loss of

consortium." *Id.* at *20-21 (citation omitted).  In rejecting the plaintiffs' claims, the district court ruled that "[a]s a distributor of Fosamax, [the distributor] ha[d] no power to change Fosamax labeling." *Id.* at *27.  According to the court, "[t]hat power lies with the applicant who . . . seek[s] approval to market Fosamax" – in that case, Merck.  *Id.*  Additionally, the court noted that if the FDA had become aware of new safety information in connection with Fosamax use that it believed should be included in the labeling, the FDA would have notified Merck – not the distributor. *Id.*  Because the distributor "ha[d] no authority to initiate a labeling change" and "no power to unilaterally change Fosamax labeling," it "could not 'independently do under federal law what state law requires of it.'"  *Id*. at *27-28 (quoting *Mensing*, 564 U.S. at 620-21).  Accordingly, the court found that "the state law claims brought against [the distributor] [were] preempted."  *Id.* at *28.

40.     Here, plaintiff's claims against KB Orthopedics all rest on either a failure-to-warn theory or a defective design theory.  (*See* Compl. ¶ 11 (alleging all "[d]efendants played an integral role in the omissions and misinformation that resulted in the orthopedic community and, in particular, Plaintiff's surgeon, using the ASR and Pinnacle"); *id.* ¶ 13 ("Defendants are and were aware the metal released from the ASR and Pinnacle Devices result[s] in unreasonably high rates of negative clinical outcomes . . . ."); *id.* ¶ 26 (alleging KB Orthopedics was

"responsible for informing & educating medical providers, marketing, selling & facilitating distribution of the product, and servicing and supporting Plaintiff's orthopedic surgeons and the ASR and Pinnacle hip replacements at issue in this matter"); *id.* ¶ 157 ("The ASR and Pinnacle were defective and unreasonably dangerous in that the labeling was insufficient to warn users of the hazardous conditions posed by said items"); *id.* ¶ 159 ("The ASR and Pinnacle were defective due to . . . latent manufacturing defects which resulted in toxic release of heavy metal ions causing the injuries described herein.").) However, KB Orthopedics had "no authority" to effectuate changes to the products or their labeling, *In re Fosamax*, 2012 U.S. Dist. LEXIS 5817, at *26-28; nor could it possibly "redesign" the products to make them more proper, appropriate or correct, *see Bartlett*, 570 U.S. at 483-84.[5]

41.      In sum, all of plaintiff's claims against KB Orthopedics have no reasonable possibility of success because they are preempted, rendering that defendant fraudulently joined.

### C.      The Amount In Controversy Exceeds $75,000.

42.      The amount-in-controversy requirement for diversity jurisdiction is

---

[5] Although some courts have recently rejected removing defendants' preemption argument in other Pinnacle cases, their decisions rested on an unduly narrow reading of *Mensing* and federal preemption principles and should not be followed.  As another court explained, "the rationale of *Mensing* and its progeny applies with equal force on facts like those alleged here" – i.e., claims against distributors of the ASR and/or Pinnacle who are alleged to have misrepresented the risks of that product.  *Hall*, 541 F. Supp. 3d at 808.  While the *Hall* court ultimately declined to take the "step" of denying remand on preemption grounds given the "procedural posture" of the case, it did so after expressing its view that the applicability of *Mensing* to claims against the distributors "does not appear to involve much, *if any*, doubt."  *Id.* (emphasis added).

satisfied in this case because it is clear from the face of plaintiff's Complaint that the "matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a).

43.     Plaintiff in this action claims that he "suffered substantial injuries" as a result of his implantation with the ASR and Pinnacle Cup System. (*See, e.g.*, Compl. ¶ 17.)   Among other things, he alleges that he has been forced to undergo surgical removal of the ASR device and anticipates a future surgical revision of the Pinnacle Cup System. (*Id.* ¶¶ 137, 140.)  Plaintiff seeks compensatory, punitive and treble damages. (*See, e.g.*, *id.*, Prayer for Relief.)

44.     It is widely recognized that personal injury claims facially meet the $75,000 jurisdictional threshold. *See, e.g.*, *In re Rezulin*, 133 F. Supp. 2d at 296 (finding that a complaint alleging various injuries from taking a prescription drug "obviously asserts a claim exceeding $75,000"); *Smith v. Wyeth Inc.*, 488 F. Supp. 2d 625, 630-31 (W.D. Ky. 2007) (denying motion to remand); *Copley v. Wyeth, Inc.*, No. 09-722, 2009 WL 1089663 (E.D. Pa. Apr. 22, 2009) (same).

45.     Given plaintiff's claim that he has suffered "substantial" personal injuries, his allegation that his injuries have necessitated one surgery already and will necessitate another in the future, and his request for compensatory, punitive and treble damages (*see* Compl. ¶¶ 17, 137, 140 & Prayer for Relief), it is evident that

the amount of recovery sought by plaintiff exceeds $75,000.

## II.   THE REMOVING DEFENDANTS HAVE COMPLIED WITH ALL REMOVAL PROCEDURES.

46.    Defendants Johnson & Johnson Services, Inc., Medical Device Business Services, and DePuy Synthes Sales, Inc. were each served with plaintiff's Complaint on April 17, 2023.  Defendant Johnson & Johnson was served with plaintiff's Complaint on April 18, 2023.  Accordingly, this Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b).

47.    The Fourth Judicial District Court of Montana, Missoula County is located within the District of Montana.  *See* 28 U.S.C. § 1441(a).  Therefore, venue for this action is proper in this Court because the Missoula Division of the District of Montana is the "district and division embracing the place where such action is pending." *See id.*

48.    None of the removing defendants is a citizen of the State of Montana, the State where this action was brought.  *See* 28 U.S.C. § 1441(b).

49.    While removal based on traditional diversity jurisdiction generally requires consent of all defendants, it is well settled that only properly joined defendants need consent to removal.  *See Romano v. Am. States Ins. Co.*, 295 F. Supp. 3d 307, 318 (W.D.N.Y. 2017).  Here, plaintiff's claims against KB Orthopedics are fraudulently joined with his claims against the removing defendants.

26

Therefore, KB Orthopedics need not consent to removal. Buhr consents to removal of this action to this Court.

50.    No previous application has been made for the relief requested herein.

51.    Pursuant to 28 U.S.C. § 1446(a), copies of all process, pleadings, orders, and other documents on file with the Fourth Judicial District Court of Montana, Missoula County, are attached hereto as Exhibit 1.

WHEREFORE, the removing defendants give notice that the matter bearing No. DV-32-2023-0000249-PL in the Fourth Judicial District Court of Montana, Missoula County, is hereby removed to the United States District Court for the District of Montana, and requests that this Court retain jurisdiction for all further proceedings in this matter.

Dated: May 10, 2023.

Respectfully submitted,

DAVIS, HATLEY, HAFFEMAN & TIGHE, P.C.

By /s/ *Maxon R. Davis*

Maxon R. Davis
The Milwaukee Station, 3rd Floor
101 River Dr. N.
Great Falls, Montana 59401
*Attorneys for Defendants Medical Devices Business Services, Inc., Depuy Synthes Sales, Inc., Johnson & Johnson Services, Inc., and Johnson & Johnson*

27